UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MONIQUE J.,<br><br>        Plaintiff,<br><br>  v.<br><br>KILOLO KIJAKAZI,<br>  Acting Commissioner of Social Security,<br><br>        Defendant. | Case No. 22 C 4573<br><br>Magistrate Judge Sunil R. Harjani |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Monique J. seeks judicial review of the Commissioner of Social Security Administration's final decision denying her claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. Monique's brief seeks reversal of the ALJ's decision and remand, and the Acting Commissioner's response brief seeks an order affirming the ALJ's decision. For the reasons discussed below, the Court reverses and remands the ALJ's decision.

**I. BACKGROUND**

Monique applied for SSI in August 2016, at age 46, alleging disability since April 14 2014. She suffers from diabetes, obesity, obstructive sleep apnea, sciatica, seizure disorder, hypothyroidism, depression, bipolar disorder, and post-traumatic stress disorder. She has an extensive history of drug abuse and several suicide attempts. She also reported a history of sexual abuse. Monique did not complete high school or obtain an GED. She has previously worked as a hair stylist, but the ALJ found that she has no past relevant work.

Monique's application was denied at all levels, and she appealed to the district court on November 25, 2019. On August 17, 2020, this Court remanded the case for further proceedings pursuant to the Commissioner's agreed motion for reversal with remand. (R. 895-99). On September 30, 2020, the Appeals Council vacated the Commissioner's prior decision and remanded the case for further evaluation of several issues, including the mental RFC with respect to social limitations. *Id.* at 902-03.

A second hearing was held before a different ALJ on January 12, 2021. (R.823-59). On January 27, 2021, the ALJ issued a decision finding that Monique's obesity, obstructive sleep apnea, diabetes mellitus, sciatica, major depressive disorder, bipolar disorder, and post-traumatic stress disorder were severe impairments but did not meet or equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 805-07. The ALJ also found Monique's substance abuse disorder, seizure disorder, and hypothyroidism were not severe impairments. *Id.* at 805-06. Under the "paragraph B" analysis, the ALJ found that Monique had mild limitations in understanding, remembering, or applying information, moderate limitations in interacting with others, moderate limitations in concentrating, persisting, or maintaining pace, and mild limitations in adapting or managing oneself. *Id.* at 806-07.

The ALJ then determined that Monique had the residual functional capacity ("RFC") to perform light work except she: (1) can frequently stoop, kneel, crouch, crawl, and climb ramps and stairs; (2) can never climb ladders, ropes, or scaffolds; (3) can never perform work tasks involving exposure to extraordinary hazards such as unprotected heights and dangerous unguarded moving mechanical parts that can engage the body parts; (4) can sustain the attention and concentration to carry out only simple, routine, repetitive work tasks and make only simple work related decisions; (5) can never perform fast-paced production line work tasks that are timed and

is limited to goal oriented work tasks; (6) can do no work tasks that require interaction with the public; (7) can work in proximity to others but not on joint or tandem work tasks; and (8) can tolerate occasional supervisor contact. *Id*. at 808. Given this RFC, the ALJ concluded that Monique was not disabled because she is capable of performing a significant number of jobs in the national economy, such as inspector/hand packager, laundry sorter, and small products assembler. Monique has again sought judicial review of the ALJ's decision.

## II. **DISCUSSION**

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the ALJ conducts a five-step inquiry: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals any of the listings found in the regulations, *see* 20 C.F.R. § 404, Subpt. P, App. 1 (2004); (4) whether the claimant is unable to perform her former occupation; and (5) whether the claimant is unable to perform any other available work in light of her age, education, and work experience. 20 C.F.R. § 416.920(a)(4); *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). These steps are to be performed sequentially. 20 C.F.R. § 416.920(a)(4). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Clifford*, 227 F.3d at 868 (quotation marks omitted).

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon a legal error. *Steele v. Barnhart*, 290 F.3d 936,

3

940 (7th Cir. 2002). Substantial evidence is "more than a mere scintilla" and means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. ----, 139 S.Ct. 1148, 1154 (2019) (quotation marks omitted). In reviewing an ALJ's decision, the Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination." *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022) (quotation marks omitted). Nevertheless, where the ALJ's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele*, 290 F.3d at 940.

In support of her request for reversal and remand, Monique raises three main arguments. First, she challenges the ALJ's assessment of her mental RFC. Second, Monique argues that the ALJ failed to properly evaluate the medical opinion evidence, which undermines the mental RFC determination. Third, she argues the ALJ improperly discredited her statements regarding her limitations. Monique's first challenge to the ALJ's mental RFC determination consists of two parts. She objects that the ALJ did not adequately account for her moderate limitations in interacting with others in the mental RFC finding. She also contends that the ALJ failed to adequately account for her moderate limitations of concentration, persistence, or pace when she determined Monique's mental RFC. The Court finds that the mental RFC did not adequately capture the whole of Monique's limitations with respect to interacting with others. Because this error is enough by itself to require a remand, the Court does not address Monique's other arguments.

The RFC is "an assessment of an individual's ability to do sustained work. It is the most an individual can work despite his or her limitations or restrictions." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022) (internal citations omitted). "As a general rule, both the hypothetical

4

posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014); *Deborah M. v. Saul*, 994 F.3d 785, 791 (7th Cir. 2021). When the hypothetical question "does not include all of the limitations supported by medical evidence in the record, the decision of the ALJ that a claimant can adjust to other work in the economy cannot stand." *Young v. Barnhart*, 362 F.3d 995, 1005 (7th Cir. 2004).

In February 2017, state agency reviewing psychologist M.W. DiFonso, Psy.D., assessed moderate limitations in the paragraph B criteria of interacting with others. (R. 84). Dr. DiFonso also assessed Monique's mental RFC. In the worksheet portion of the form regarding social interaction limitations, Dr. DiFonso identified moderate limitations in two areas: (1) interacting appropriately with the general public and (2) accepting instructions and responding appropriately to criticism from supervisors. *Id*. at 89. In the Additional Explanation portion of the form, Dr. DiFonso explained that Monique's "[i]nterpersonal skills are moderately limited by social anxiety" and he "recommended moderate limit of social expectations." *Id*. Dr. DiFonso concluded that Monique was capable of "modified social demand." *Id*. On reconsideration, state-agency reviewing psychologist Lionel Hudspeth, Psy.D., affirmed Dr. DiFonso's opinion. *Id*. at 104.

In her paragraph B analysis, the ALJ found Monique had a moderate limitation in interacting with others. (R. 807). The SSA defines interacting with others as the ability "to relate to and work with supervisors, co-workers, and the public." 20 C.F.R. § 404, Subpt. P, App. 1, § 12.00(E)(2). The ALJ noted Monique's self-report that she had no problems getting along with family, friends, neighbors, or others. (R. 181, 807). The ALJ failed to mention that Monique reported that she struggles with getting along with authority figures, such as bosses. *Id*. at 182. Citing a single treatment document, the ALJ remarked that the overall treatment record indicated

5

that Monique typically presented in a stable mood with appropriate affect and that she was able to engage in conversation and provide historical information without difficulty. *Id*. at 399, 807. Finally, the ALJ cited the state agency psychologists' determination that Monique had a moderate limitation in this area. *Id*. at 84, 99, 807. In defining Monique's mental RFC, the ALJ gave significant weight to the opinions of state agency psychologists. *Id*. at 814. The ALJ addressed Monique's moderate limitations in interacting with the public by limiting her to "no work tasks that require interaction with the general public." *Id*. at 808. And because of her moderate limitations in interacting with co-workers, she was also limited to "work in proximity to coworkers but not on joint or tandem work tasks." *Id*. To account for her moderate difficulties interacting with supervisors, the ALJ found Monique limited to "occasional supervisor contact." *Id*. at 808.

Monique argues that a limitation to occasional supervisor contact does not sufficiently address her moderate limitations in interacting with supervisors. In particular, Monique challenges the ALJ's failure to incorporate into the mental RFC a limitation regarding the substance of her interactions with supervisors, rather than the frequency of those interactions. The Court concludes that substantial evidence does not support the ALJ's decision not to include an RFC restriction as to the quality of Monique's interactions with supervisors.

"'Occasional contact' goes to the quantity of time spent with the individuals, whereas 'superficial contact' goes to the quality of the interactions. These limitations are not interchangeable, nor does one imply the other." *Hurley v. Berryhill*, 2018 WL 4214523, at *4 (N.D. Ind. Sept. 5, 2018) (internal citation omitted); *Wartak v. Colvin*, 2016 WL 880945, at *7 (N.D. Ind. March 8, 2016). As such, "[e]ven a job that requires only occasional interaction could require an employee to engage in prolonged or meaningful conversations during those few occasions." *Green v.* Saul, 2020 WL 4593331, at 4 (N.D. Ind. Aug. 11, 2020) (quotation marks omitted).

6

Here, in making her RFC determination, the ALJ summarized the objective medical evidence and Monique's testimony as to alleged social interaction limitations. (R. 808-813). As part of that discussion, the ALJ noted that during mental health outpatient therapy in September 2017, Monique was "an active participant in group activity and group discussions." *Id*. at 811. The ALJ then stated that this evidence "supports the finding that [Monique's] mental impairments would not reasonably prevent her from sustaining *superficial, occasional* contact with others in the workplace." *Id*. Thus, the ALJ found that quantitative (occasional) and qualitative (superficial) social interaction limitations were necessary and supported by the evidence. However, the ALJ did not include a limitation to superficial supervisor interaction in her mental RFC assessment. This is the primary problem with the ALJ's analysis of Moniques's ability to interact with supervisors. Moreover, the ALJ made no attempt to explain her basis for limiting Monique to "occasional" interaction with supervisors rather than both "superficial" and "occasional" interaction, despite explicitly finding a superficial interaction with others limitation supported by the evidence. Under these circumstances and given the absence of any explanation for why the ALJ omitted a qualitative interaction limitation with supervisors from the RFC, the Court cannot find the decision to omit this limitation from the RFC was supported by substantial evidence.

Further, despite finding the state agency psychologists' opinions merited "significant" weight and were consistent with the record, the ALJ did not specifically evaluate their "checklist" finding that Monique was moderately limited in her ability to handle instructions and criticism from supervisors. The ALJ's mental RFC and hypothetical to the VE omitted any mention of Monique's moderate limitation in this area of supervisor interactions. The only other opinions in the record on Monique's social limitations were from Nurse Practitioner Elsy Joseph, M.S.N., R.N., and Feliz Acuna, LSW. (R. 587-88, 1431-34). However, the ALJ gave both of those opinions

less weight than the opinions of the state agency psychologists. *Id*. at 814. As a result, the ALJ did not explain, nor is it self-evident, how the mental RFC accommodates these assessed supervisor interaction limitations by the state agency psychologists or why she did not include them in the mental RFC.

The Commissioner maintains that the ALJ's mental RFC adequately accounts for the state agency psychologists' opinions and the ALJ properly relied on their opinions. Doc. 19 at 4-5. It is true that "in some cases, an ALJ may rely on a doctor's narrative RFC, rather than the checkboxes, where that narrative adequately encapsulates and translates those worksheet observations." *Varga v. Colvin*, 794 F.3d 809, 816 (7th Cir. 2015); *Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021) (an ALJ may reasonably rely on the narrative RFC if it is "in fact consistent with the 'moderate' checklist ratings."). However, the Commissioner makes no attempt to explain how the state agency psychologists' narrative explanation "adequately encapsulates and translates" their checklist limitation about Monique's ability to interact with supervisors. In the section of the form for a narrative explanation, the state agency psychologists wrote "SEE BELOW." (R. 89, 104). Then, in the "Additional Explanation" section at the bottom of the form, they stated that Monique would be capable of "modified social demand." *Id*. at 90, 104. The state agency psychologists did not define what they meant by modified social demand. In other words, the state agency psychologists did not provide an opinion as to Monique's specific work-related social functional limitations in the narrative section. Specifically, the "Additional Explanation" sections did not provide any qualifications regarding Monique's ability to handle instructions and criticism from supervisors, which is medical evidence that cannot be ignored. *Varga*, 794 F.3d at 816. These opinions do not translate what the consultants meant when they indicated Monique was moderately limited in handling instructions and criticism from supervisors. Thus, it is not clear that that "Additional

8

Explanation" "adequately encapsulates and translates" these limitations. *Id.* In light of the psychological consultants' failure to translate Monique's moderate deficits in handling instructions and criticism from supervisors into a specific RFC limitation, the ALJ's RFC needed to account for these moderate limitations. *Id*. (where "no narrative translation exists . . . an ALJ's hypothetical question to the VE must take into account any moderate difficulties in mental functioning found in Section I of the MRFCA form."). The ALJ did not do that. She found a superficial, occasional contact with others limitation supported by the evidence but did not include a superficial interaction with supervisors limitation in her RFC findings and hypothetical.

The Commissioner argues that the state agency "opinion forms are clear that the psychologists' [checkbox] ratings are not RFC assessments." Doc. 19 at 5. This argument is not persuasive. The Seventh Circuit "has declined to adopt a blanket rule that checked boxes in Section 1 of the MRFCA form indicating moderate difficulties in mental functioning need not be incorporated into a hypothetical to the VE." *Varga*, 794 F.3d at 816. "Worksheet observations, while perhaps less useful to an ALJ than a doctor's narrative RFC assessment, are nonetheless medical evidence which cannot just be ignored." *Id*; *DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019) ("even if an ALJ may rely on a narrative explanation, the ALJ still must adequately account for limitations identified elsewhere in the record, including specific questions raised in check-box sections of standardized forms such as the PRT and MRFC forms."). Finally, the Commissioner's related argument that a moderate limitation is not a complete impairment but rather means functioning in this area is "fair" misses the point. While a moderate limitation does not signify a work-preclusive limitation on interacting with supervisors, all of a claimant's limitations supported by the medical record, including a moderate limitation in interacting with supervisors, must be included in the RFC and presented to the VE for consideration. *DeCamp*, 916

9

F.3d at 676 (holding the ALJ improperly "focused her analysis on the doctors' bottom-line conclusion that [claimant] was not precluded from working without giving the vocational expert any basis to evaluate *all* [claimant's] impairments.").

All of this leaves the Court unclear as to whether the ALJ properly accounted for Monique's social limitations relating to supervisors in the mental RFC. The Court cannot reconcile the ALJ's failure to adopt an RFC with at least a superficial contact with supervisors limitation as she found the evidence supports. The record is also unclear if the identified jobs would still be available to Monique if she were restricted to superficial and occasional interaction with supervisors. The ALJ did not ask the VE to restrict Monique to superficial and occasional contact with supervisors. The VE did testify there would be no work for a person that "was not always able to respond appropriately to the supervisor, either in regards to criticism or just, generally responding." (R. 856). Considering the absence of VE testimony regarding a limitation to superficial and occasional contact with supervisors, the Court cannot say with confidence that the result would have been the same if the ALJ had incorporated this particular social interaction limitation into both the mental RFC and the hypothetical. *Butler v. Kijakazi*, 4 F.4th 498, 504 (7th Cir. 2021) ("the harmless error standard applies to judicial review of administrative decision, and we will not remand a case to the ALJ for further specification where we are convinced that the ALJ will reach the same result.") (quotation marks omitted).

Indeed, that checkbox limitation regarding handling instructions and criticism from supervisors was central to the Appeals Council's directive that further evaluation of the RFC was warranted regarding the limitations related to supervisors. (R. 902). The Appeals Council noted that the state agency psychologists reported that Monique was capable of modified social demand and that she was moderately limited in the ability to accept instructions and respond appropriately

10

to criticism from supervisors. *Id.* The Appeals Council further noted that Nurse Practitioner Joseph also reported moderate limitations in Monique's ability to ability to handle instructions and criticism from supervisors. Because the original RFC did not contain any limitations related to supervisors, the Appeals Council found it "unclear if the step five jobs could be performed if the claimant were limited in her interactions with supervisors." *Id.* Despite the directive to resolve this issue related to supervisor interaction limitations, the ALJ failed to include any qualitative interaction limitation in relation to supervisors in the RFC and hypothetical question. It is therefore necessary for the ALJ to re-evaluate Monique's mental RFC regarding interactions with supervisors.

  This is enough to remand this case, but the Court notes an additional issue that warrants attention on remand. Monique contends that the ALJ failed to account for or explain why her moderate limitations in interacting with others did not warrant a greater limitation regarding the frequency of interacting with supervisors. The Court agrees. The ALJ found Monique's severe mental impairments caused moderate limitations interacting with others. From this, as to the public and coworkers, the ALJ reasoned that Monique was limited to no work tasks that require interaction with the general public and no joint or tandem work tasks with coworkers. But as it relates to supervisors, the ALJ determined that Monique retained the ability to occasionally interact with supervisors, without explaining this distinction. In her decision, the ALJ provided no analysis for finding that Monique's moderate limitations in interacting with others would allow for occasional interactions with supervisors despite limitations to no interaction with the general public and no joint or tandem work with coworkers. The state agency psychologists did not articulate a greater limitation in interacting with the public and coworkers. In fact, in the section of the "checkbox" limitations, the state agency psychologists found Monique was moderately

11

limited in the ability to interact appropriately with the general public *and* the ability to accept instructions and respond appropriately to criticism from supervisors, but not significantly limited in the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (R. 89, 104). The ALJ did not explain why Monique's moderate limitation in interacting with others differs based on whether the interaction is with "the general public," "coworkers," or "supervisors."

Moreover, as part of her RFC decision, the ALJ credited Monique's testimony that she feared going outside and interacting with others might threaten her sobriety as it had done in the past. (R. 814-15). The ALJ explained her decision to assign an occasional interaction limitation by noting that "[o]ccasional interaction with others in the workplace would not present the same threat." *Id.* at 815. It is not clear how the ability to maintain sobriety equates to the ability to handle interactions with supervisors during the workday. Accordingly, this analysis is not sufficient to support a decision by the ALJ to adopt an occasional supervisor interaction limitation, without more explanation. To be clear, the Court is not holding that a restriction to occasional interaction is not an accurate reflection of moderate limitations of social expectations—only that the ALJ should explain why a moderate limitation in interacting with others and the specific functional limitations set forth in the checkbox section by the consultants fairly equate to occasional interaction with supervisors but no work activity requiring interaction with the general public and no joint or tandem work tasks with coworkers.

In sum, the Court finds substantial evidence does not support the ALJ's decision based on her failure to adequately explain her mental RFC assessment regarding Monique's ability to interact with supervisors. On remand, the ALJ shall provide a thorough explanation of her conclusions regarding the mental limitations in social interactions she credited, the reasons for

12

including or not including social interaction limitations in the RFC, and the effect any social interaction limitations have on Monique's ability to work other jobs in the national economy. Because the Court reverses and remands on the mental RFC's supervisor interaction limitation, the Court does not analyze Monique's other arguments. However, Monique shall raise her arguments regarding any other alleged errors by the ALJ on remand. *See* 20 C.F.R. § 404.983(a) (on remand, "any issues relating to the claim(s) may be considered by the Appeals Council or administrative law judge whether or not they were raised in the administrative proceedings leading to the final decision in the case.").

### III. CONCLUSION

For the reasons and to the extent stated above, Monique's request for reversal and remand [13] is granted in part and the Acting Commissioner's request for affirmance [19] is denied. The ALJ's decision is reverse, and the case is remanded for further proceedings consistent with this Opinion.

**SO ORDERED.**

Dated: October 27, 2023

_____
Sunil R. Harjani
United States Magistrate Judge